Filed 1/28/26  P. v. Marquez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D086920 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. INF2000509, SWF1907470) |
| ANTHONY JACOB MARQUEZ, | |
| Defendant and Appellant. | |

APPEAL from judgments of the Superior Court of Riverside County, James S. Hawkins, Judge.  (Retired Judge of the Riverside Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in case No. INF2000509, reversed in case No. SWF1907470.

Sylvia W. Beckham, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

Anthony Jacob Marquez appeals from two criminal judgments. In the first case (INF2000509), Marquez was convicted of kidnapping his romantic partner during an extended assault. He argues there was insufficient evidence to support the jury's verdict on this count because there is some evidence he may have believed his partner consented to being driven in her car. We conclude, however, that there was more than substantial evidence— including the victim's verbal protestations and her attempt to throw the car key out of the window to prevent him from driving—to support the conviction. We thus affirm.

In the second case (SWF1907470), Marquez argues the trial court improperly imposed an upper term sentence without an appropriate factual finding or stipulation as to an aggravating factor, as required by Penal Code[1] section 1170, subdivision (b) as modified by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567). Whether Senate Bill 567 applies to defendants like Marquez, who stipulated to an upper term sentence pursuant to a plea agreement, has split the Courts of Appeal, and the Supreme Court has granted review on this issue.[2] We agree with the reasoning of courts that have allowed defendants like Marquez to seek the ameliorative benefits of

---

[1] All further undesignated statutory references are to the Penal Code.

[2] Compare *People v. De La Rosa Burgara* (2023) 97 Cal.App.5th 1054, 1063, review granted February 21, 2024, S283452 (*De La Rosa*) (defendant entitled to remand); *People v. Todd* (2023) 88 Cal.App.5th 373, 381–382, review granted April 26, 2023, S279154 (*Todd*) (same); and *People v. Fox* (2023) 90 Cal.App.5th 826, 831 (*Fox*) (same) with *People v. Mitchell* (2022) 83 Cal.App.5th 1051, 1057–1059, review granted December 14, 2022, S277314 (defendant not entitled to remand); *People v. Sallee* (2023) 88 Cal.App.5th 330, 340–341, review granted April 26, 2023, S278690 (same); and *People v. Kelly* (2022) 87 Cal.App.5th 1, 4, review granted March 22, 2023, S278503 (same).

Senate Bill 567.  We therefore reverse case No. SWF1907470 and remand this matter for further proceedings, as detailed below.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The 2020 Assault*

Jane Doe began a relationship with Marquez in early 2019, and the two dated on and off for over a year.  In late April 2020, the couple made plans to celebrate their anniversary together, and Doe drove to the motel where Marquez was staying.  As she was driving, they began arguing through text message.  Marquez told her he was drunk and to stay away.

Doe arrived at the motel after dark and parked on the street.  By that point, she had decided to end their relationship.  Doe got out of the car to return a necklace that belonged to Marquez, leaving it on the air conditioning unit outside of his room.  She went back to her car and texted Marquez that she had returned the necklace.

Almost immediately, Marquez ran out of his room to Doe's car.  She tried to leave, but before she could start the car, Marquez reached in the driver-side window, grabbed Doe's hair, and accused her of sleeping with another man at the motel.  He pulled her out of the car as he punched her repeatedly and continued to accuse her of infidelity.  He pulled her by her clothes, ripping both her dress and her bra.  She was bleeding from a cut above her eye.  Doe resisted, punching Marquez and using her leg to push him away, but he intensified his assault.

Doe was able to get back into the driver's seat of her car.  Marquez followed and forced her over to the passenger side, saying, "We got to get out of here.  You're being loud.  You're going to get the cops called on us, screaming."  As Marquez was trying to get in driver's side, Doe said, "You're not driving my car.  You've been drinking."  She added, "I'll drive if I have to.

3

But, like, you're not driving my car." She told Marquez she did not want him in her car, "to go away, [and] leave [her] alone." She tried to throw her key out of the window to prevent him from starting the car, but Marquez caught her hand.

Marquez pinned her against the passenger seat by the throat, cutting off her airway as he said, " 'You're not so fucking brave now, are you?' " Doe swung at Marquez, trying to get him off her throat. Doe testified she "did everything [she] could to not go with" Marquez.

Nonetheless, he started the car and started driving. Doe told him he should not be driving, but Marquez told her to "shut up." He continued to accuse Doe of sleeping with someone else and punched her every time she denied it. Within a few minutes, he lost control of the car and crashed into a curb. He continued driving the damaged car, finally stopping in a parking lot.

They both got out of the car, and Doe walked with Marquez back to the motel because she was unfamiliar with the area and had nowhere else to go. Doe later tried to get away from Marquez by getting into a stranger's car, then by hiding behind a gate and jumping into a dumpster. She eventually spotted a jail, where she asked an officer for help. Doe suffered extensive injuries from the assault, including bruising over her face, neck, and arms; cuts on her face; and a missing patch of hair.

## B. *Procedural History*

Several months before the April 2020 incident, a five count information was filed against Marquez, stemming from previous assaults on Doe. In that matter, case No. SWF1907470, Marquez was charged with: (1) infliction of a corporal injury resulting in a traumatic condition to Doe on or about July 3, 2019, with personal infliction of great bodily injury (§§ 273.5, subd. (f)(1),

4

12022.7, subd. (e), count 1); (2) misdemeanor battery (§ 243, subd. (e)(1), count 2); (3) violation of a protective order (§ 273.6, subd. (a), count 3); (4) infliction of a corporal injury resulting in a traumatic condition to Doe on or about December 7, 2019, with penalty enhancement for felony committed while a prior felony release (§§ 273.5, subd. (f)(1), 12022.1, count 4); and (5) attempting to dissuade a witness (§ 136.1, subd. (a)(1), count 5).

Pursuant to an agreement, Marquez pleaded guilty to the two corporal injury counts, and the prosecutor agreed to dismiss the remaining counts. The parties requested that the court suspend a sentence of 12 years, which included: an upper term of five years on count 1 and five years for the great bodily injury enhancement; a low term of two years for count 4 concurrent with count 1; and a two-year consecutive term for the penalty enhancement while on prior felony release, subject to Marquez successfully completing five years of probation.

In May 2024, a jury trial was held on the three counts against Marquez arising from the April 2020 assault, case No. INF2000509. The jury found appellant guilty of willful infliction of corporal injury to a dating partner resulting in a traumatic condition while having been previously convicted of the same crime (§ 273.5, subd. (f)(2), count 1); assault by means likely to result in serious bodily injury (§ 245, subd. (a)(4), count 2); kidnapping (§ 207, subd. (a)), count 3); and found true that Marquez was previously convicted of two strike offenses (§ 667 subd. (c)–(e)(1)). The court found Marquez in violation of probation in case No. SWF1907470.

In August 2024, the court sentenced Marquez in both matters. As relevant here, the court imposed the stipulated and previously suspended 12-

5

year sentence in case No. SWF1907470, to be served concurrently with the sentence in case No. INF2000509.[3]

## DISCUSSION

### A.   *Case No. INF2000509 – Substantial Evidence of Kidnapping*

Marquez argues his "kidnapping conviction should be reversed because there is substantial evidence to support a reasonable belief that there was consent for the movement" of Doe.  Of course, whether there was evidence to support a different conclusion is not the test.  "In reviewing the sufficiency of the evidence to support a jury's verdict finding a defendant guilty of a criminal offense, we apply the substantial evidence standard of review."  (*People v. Johnson* (2019) 32 Cal.App.5th 26, 57.)  We "view[] the trial evidence in the light most favorable to the prosecution and presum[e] every fact the jury could reasonably deduce from that evidence."  (*People v. Pearson* (2012) 53 Cal.4th 306, 319.)  We " ' "must accept logical inferences that the jury might have drawn from the evidence even if [we] would have concluded otherwise." ' "  (*People v. Solomon* (2010) 49 Cal.4th 792, 811–812.)  "Reversal . . . is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the convictions].' "  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

To secure a conviction on the kidnapping charge, the prosecution had to prove:  (1) Marquez "took, held, or detained" Doe "by using force or by instilling reasonable fear"; (2) "[u]sing that force or fear," Marquez moved Doe or made her move "a substantial distance"; (3) Doe "did not consent to

_____

3     The sentence on case ending 509 included an indeterminate term of 25 years to life on the kidnapping conviction (count 3) along with a six-year determinate term on the infliction of corporal injury charge (count 1).  The four-year sentence on assault (count 2) and five-year sentence for each strike prior were stayed (§ 654).

6

the movement"; and (4) Marquez "did not actually and reasonably believe" that Doe "consented to the movement." (See CALCRIM No. 1215; see also § 207, subd. (a).) Marquez only challenges the last element, claiming he actually and reasonably believed Doe consented to the movement "[b]ased on the nature of their intimate relationship coupled with Doe's equivocal words and actions." We conclude there was substantial evidence that Marquez did not reasonably believe Doe consented to being driven in her car.

Marquez first physically prevented Doe from leaving by pulling her out of the car and brutally assaulting her. When Doe was able to get back in her car and again attempted to drive away, Marquez forced his way into the driver seat. She told him, "You're not driving my car," that she did not want him in her car, and "to go away, [and] leave [her] alone." Doe even tried to throw her key out of the window to prevent him from driving them away. She testified she "did everything [she] could to not go with" Marquez. In response, Marquez throttled her, threatened her, and drove them off anyway. Doe again told him he should not be driving. He ignored her pleas, and continued to berate and assault Doe as he drove. In these circumstances, the jury could easily find it was objectively unreasonable for Marquez to believe that Doe consented to being moved.

Marquez notes that he and Doe shared a "prior close relationship," which may suggest consent, as noted in *People v. Camden* (1976) 16 Cal.3d 808, 815, footnote 4. He also points to Doe's history of trying to hide his domestic abuse from law enforcement, suggesting he could have believed Doe wanted to leave with him so he would not be arrested. As *Camden* notes, a prior relationship is "relevant" but "not dispositive where there is substantial evidence that asportation was induced or continued by means of threat or force." (*Ibid.*) Despite their romantic history, including her prior efforts to

7

shield him from legal repercussions, there was ample evidence that Doe did not consent, or reasonably appear to consent, to being driven away from the motel *on this occasion*.

Marquez also claims Doe's conduct was "equivocal" because she did not testify she attempted to leave the car and because she said she would drive the car, " 'if I have to.' "  While the jury was entitled to consider this evidence, there was significant countervailing evidence, including her testimony that she "did everything [she] could to not go with" Marquez.  Viewing the record in the light most favorable to the conviction, a jury could reasonably conclude Marquez did not actually and reasonably believe that Doe consented to being driven.

## B. *Case No. SWF1907470 – Upper Term Sentence*

In 2020, when Marquez entered his plea, the choice to impose a lower, middle, or upper term sentence was committed to "the sound discretion of the court."  (See Stats. 2018, ch. 1001, § 1 [former § 1170, subd. (b)].)  But when the court ultimately entered judgment in 2024, following the passage of Senate Bill 567, a trial court was permitted to impose an upper term sentence only when aggravating circumstances "have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)  Marquez argues that, although he agreed to the sentence in his plea agreement, the change in the law renders his agreement to an upper term sentence invalid in the absence of an appropriate finding of or stipulation to aggravating circumstances.  He asks this court to "remand[] with directions to allow [him] to waive or invoke the requirements of section 1170, subdivision (b)."

The People first argue that Marquez has forfeited this argument by failing to make it in the trial court.  Marquez was sentenced in August 2024,

20 months after the amendment to section 1170, subdivision (b) went into effect, but did not alert the trial court of his concern. (See Stats. 2022, ch. 744.) Several courts have found appellate forfeiture in similar circumstances. (See, e.g., *People v. Achane* (2023) 92 Cal.App.5th 1037, 1042, 1047; *People v. Anderson* (2023) 88 Cal.App.5th 233, 241–242, 304.)

But, as Marquez notes, in *People v. French* (2008) 43 Cal.4th 36, the Supreme Court held that a defendant "did not forfeit his Sixth Amendment right by failing to request a jury trial on the aggravating circumstances" used to justify his upper-term sentence because a defendant must expressly waive the constitutional right to a jury trial. (*Id.* at pp. 46–48.) The circumstances in *French* differ from those here in potentially meaningful ways. Nonetheless, in light of the significant uncertainty in this area and the potential Sixth Amendment implications, we deem it appropriate to exercise our discretion to reach the merits of Marquez's arguments. (Cf. *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 326–327 [exercising discretion to forgive forfeiture "because the application of amended section 1170, subdivision (b) implicates a constitutional right," as recognized in *People v. Lynch* (2024) 16 Cal.5th 730].)

With respect to the merits, the People argue that because Marquez "agreed to a specific term of imprisonment as part of his plea bargain, section 1170, subdivision (b)'s sentencing procedures are irrelevant." As we have noted, this issue has been addressed in multiple Court of Appeal decisions and is now before the Supreme Court. We therefore dispense with offering significant additional analysis, except to say we are persuaded by the logic of the courts that have allowed defendants subject to stipulated sentences to seek the benefits of Senate Bill 567, including *De La Rosa, supra*, 97 Cal.App.5th 1054, review granted, S283452, *Todd, supra*, 88 Cal.App.5th

9

373, review granted, S279154, and *Fox*, *supra*, 90 Cal.App.5th 826. Among other things, we think this best comports with *People v. Stamps* (2020) 9 Cal.5th 685, which is "the leading authority on what relief is available under ameliorative sentencing legislation that takes effect after a defendant enters a plea agreement for a stipulated sentence." (*Fox*, at p. 831.) Accordingly, we will reverse the judgment and remand the matter to permit Marquez to seek relief under section 1170, subdivision (b).

Guided by the procedures discussed in *De La Rosa*, *supra*, 97 Cal.App.5th at pages 1064–1065, review granted, S283452, we set forth the possible scenarios that might arise on remand.

If Marquez in case No. SWF1907470 waives the requirements of amended section 1170, subdivision (b), the trial court shall reinstate his original sentence. If Marquez invokes the requirements of section 1170, subdivision (b), he must state whether he stipulates to the facts underlying an aggravating circumstance justifying the imposition of the upper term on count 1 and the enhancement, or whether he desires a jury or bench trial on any aggravating circumstances alleged by the People. (§ 1170, subd. (b)(2).) If Marquez stipulates to the facts underlying an aggravating circumstance justifying the upper-term sentence, the trial court shall find that the upper term may be imposed on count 1.

If Marquez requests a trial, the People will have the burden proving beyond a reasonable doubt the truth of any alleged aggravating circumstance justifying the imposition of the upper term. (§ 1170, subd. (b)(2).) If the factfinder finds an aggravating circumstance true,[4] and the trial court

---

[4] Here we note, "[T]he court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

10

determines the upper term can be imposed on count 1, the court shall reinstate the original sentence.

If the People fail to prove the truth of an aggravating circumstance, the trial court shall find that the sentence on count 1 cannot exceed the middle term. At that point, if the court does not approve of the plea agreement with the reduced sentence or if the People do not agree to the reduced sentence, the court shall vacate the plea in toto and return the parties to their status quo ante.

## DISPOSITION

The judgment in case No. INF2000509 is affirmed. The judgment in case No. SWF1907470 is reversed, and the matter is remanded for further proceedings consistent with this opinion. On remand, Marquez should be permitted the opportunity to seek resentencing in compliance with section 1170, subdivision (b), as amended by Senate Bill 567. If the trial court resentences Marquez without vacating his guilty plea, the court shall forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.

DATO, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.

11